UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN BECKER, *et al.*,

  Plaintiffs,

 v.

ALLCOM, INC., an Alaska corporation, *et al.*,

  Defendants.

Case No. C04-0958L

ORDER REGARDING
MOTION FOR SUMMARY
JUDGMENT REGARDING
NON-WSSA CLAIMS

## I. INTRODUCTION

This matter comes before the Court on a motion filed by defendants John and Lola Amyx (the "Amyx defendants") for partial summary judgment regarding plaintiffs Steven and Rhonda Becker's claims against them for intentional misrepresentation/fraud, negligent misrepresentation, tortious interference, breach of fiduciary duty, and unjust enrichment.[1] (Dkt. #118).

For the reasons set forth in this Order, the Court grants the motion.

---

[1] Defendants have moved by separate motion to dismiss plaintiffs' remaining claim under the Washington State Securities Act, RCW 21.20 *et seq.* (the "WSSA").

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT
REGARDING NON-WSSA CLAIMS- 1

## II. DISCUSSION

**A.   Background.**

The relevant facts are set forth in detail in this Court's Order Granting Motion for Partial Summary Judgment and Order Regarding Cross-Motions for Summary Judgment Regarding WSSA Claim, and will not be repeated here.

**B.   Summary Judgment Standard.**

Summary judgment is proper if the moving party shows that "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court should consider all of the material evidence and determine whether reasonable persons could reach but one conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A court must construe all facts in favor of the non-moving party. Id. at 255.

**C.   Analysis.**

   **1.   The Released Claims.**

Plaintiffs assert claims of fraud, misrepresentation, and unjust enrichment based on their allegation that Amyx misrepresented the availability of funding for StarCom. The Settlement Agreement and the Termination Agreement, however, make no reference to funding StarCom and both contain explicit integration and non-reliance clauses. See Declaration of Steven Becker (Dkt. #142) ("Becker Decl."), Ex. 21 (Settlement Agreement) at ¶ 5A ( "Neither party has made any representation with respect to the subject matter of this Agreement to induce its execution except as specifically set forth herein").

The Settlement Agreement and Termination Agreement also contain broad release provisions; the Settlement Agreement contains the following language releasing all claims, whether known or unknown, between Becker and Allcom:

> In exchange for the consideration exchanged under this Agreement: each undersigned party discharges and releases the other party and its shareholders, subsidiaries, affiliates, directors, and officers, employees, agents and representatives of each (collectively "Released Parties") from any and all liabilities, damages, demands, claims and causes of action, past and present, known or unknown, whether in contract, tort, or by statute

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT
REGARDING NON-WSSA CLAIMS- 2

related in any way to, based on or arising out of any facts, events or circumstances occurring or existing prior to the effective date of this agreement, or Becker's employment with or separation from Allcom.

Id. at ¶ 2B. The release also bars claims against Allcom's directors and officers. Unlike plaintiffs' WSSA claim, the general release can waive their other claims.

Despite the unequivocal and broad release, Becker nevertheless claims that he can assert various claims against Amyx based on rights he obtained through the 2002 Voting Rights Agreement. Becker is incorrect. Regardless of the source of the alleged rights, Becker waived all claims related to, based on, or arising out of any facts, events or circumstances occurring or existing prior to the effective date of the Settlement Agreement. Becker acknowledges that all the alleged misrepresentations occurred before the agreements were executed. Therefore, based on this broad release, Becker waived his personal claims regarding the negotiation of the agreements, including his claims for fraud, misrepresentation, unjust enrichment,[2] and breach of fiduciary duty during the negotiation of the agreements.[3] Although a release ordinarily does not bar claims for fraud and misrepresentation occurring during the formation of an agreement, the release is enforceable in this case because Becker has not sought to avoid the contract. To the contrary, he has affirmed the Settlement Agreement by suing to enforce it and ultimately obtaining a final judgment. See, e.g., Balmer v. Norton, 82 Wn. App. 116, 120-21 (1996); see also Grillet v. Sears Roebuck & Co., 927 F.2d 217 (5th Cir. 1991). For these reasons, to the

---

[2] Plaintiffs have not alleged any fraud, misrepresentation, or unjust enrichment occurring after the execution of the agreements. Furthermore, plaintiffs' unjust enrichment claim fails for a second reason; plaintiffs have provided no evidence that Amyx "profited or enriched himself at the expense of another contrary to equity," as required to state an unjust enrichment claim. See Bort v. Parker, 110 Wn. App. 561, 580 (2002).

[3] Becker alleges that Amyx breached a fiduciary duty to him when negotiating and approving the agreements and promising funding for StarCom when he knew no such funding was forthcoming. Plaintiffs' Opposition at p. 16. However, Becker has previously admitted that Amyx owed him no fiduciary obligation in negotiating the 2003 agreements, and those negotiations were hostile.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT
REGARDING NON-WSSA CLAIMS- 3

extent that he has stated any personal claims for fraud, misrepresentation, unjust enrichment, and breach of fiduciary duty regarding the negotiation of the agreements, those claims are barred by the broad release and Becker's subsequent ratification of the agreement.

Plaintiffs also assert claims for breach of fiduciary duty and violation of the Voting Rights Agreement based on Becker's loss of majority control of StarCom. Becker claims that if he had been able to play a more active role in StarCom's management after the execution of the agreements, he could have kept StarCom out of bankruptcy and prevented the decline in stock value. Given StarCom's tenuous financial situation during the relevant time, that claim is speculative at best. Moreover, Becker argues that if Amyx had informed him of the dearth of available funding, Becker would not have given up control of the company; however, the undisputed record shows that Becker did not voluntarily relinquish control. Rather, Allcom had assumed both board and shareholder control of StarCom before the agreements were signed. Despite knowledge of that fact, and despite knowledge that Allcom had wrongfully assumed control, Becker nevertheless agreed to give up his personal rights under the Voting Rights Agreement in exchange for benefits to StarCom and waived all of his claims against Allcom and its directors and officers. After having received the benefit of the bargain, over $1 million from the Settlement Agreement, he cannot now assert a personal claim based on his loss of company control.

**2.     The Non-Released Claims.**

Becker also alleges that Amyx violated his fiduciary duty to him as a fellow director and StarCom board member after execution of the 2003 Amended SPA. Becker alleges that Amyx isolated him, removed and destroyed records, and ignored his right to have a say in StarCom's management. The events giving rise to this claim occurred after execution of the 2003 agreements and are not barred by the release. However, Becker has cited no authority to support a fiduciary duty under these circumstances.

Becker also argues that Amyx interfered with his contractual expectancy under the 2003

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT
REGARDING NON-WSSA CLAIMS- 4

Amended SPA to continue to serve as a director of StarCom by intentionally and improperly pushing him out of management before and after the agreements were signed. Becker, however, knew he had lost both board and shareholder control of the company before he signed the agreements, and he waived any claim arising out of events occurring before the agreements were signed. There is also no evidence that Amyx was an "intermeddling third party" as required by a tortious interference claim. See, e.g., Hauser v. Redmond, 91 Wn.2d 36, 39 (1978). Furthermore, Becker retained his seat on the StarCom board for eight months after Amyx resigned his position. Accordingly, plaintiffs have not shown that Amyx tortiously interfered with his right to serve on the board.

To the extent that any claim remains regarding Amyx's misrepresentations about available funding and the subsequent diminution of share value, that claim belongs to the stockholders. Becker is not seeking to avoid the 2003 SPA Amendment, but rather to recover for injuries flowing from its breach, including Allcom's failure to provide $5 million in funding.[4] He claims that as a result of the breach, StarCom lost share value and was forced into bankruptcy. These claims are necessarily derivative because Becker cannot prevail on his claims without showing an injury to StarCom. See, e.g., Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1039 (2004) ("The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation"); Agostino v. Hicks, 845 A.2d 1110, 1122-23 (2004) (explaining that a claim of corporate mismanagement is a derivative claim).[5] In fact, the 2003 Amended SPA explicitly

---

[4] Plaintiffs' Amended Complaint seeks rescission as an alternate remedy; however, their memoranda and discovery responses state that they are seeking damages pursuant to the agreements.

[5] Becker alleges that Washington, rather than Delaware, law applies pursuant to the choice of law provision in the 2003 SPA Amendment, but he has cited no Washington law to support his position. Regardless, the Court finds the Delaware body of law to be persuasive.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT
REGARDING NON-WSSA CLAIMS- 5

1 states that Allcom's obligations were for "the benefit of all shareholders and option holders in
2 StarCom." Becker Decl., Ex. 7 (2003 Amended SPA) at ¶ 1(b). This provision highlights the
3 fact that the parties intended the benefits of the agreement to flow to the stockholders and option
4 holders, and not to Becker individually. For these reasons, plaintiffs' non-released claims fail as
5 a matter of law.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS the Amyx defendants' motion for partial summary judgment (Dkt. #118).

DATED this 18th day of July, 2005.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT
REGARDING NON-WSSA CLAIMS- 6